## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JPMORGAN CHASE BANK, N.A.,     )
     )
     Plaintiff,     )
     )
vs.     )     Case No. 06-CV-624-GKF-SAJ
     )
ANN FLETCHER,     )
     )
     Defendant.     )

### OPINION and ORDER

This matter comes before the Court on the Motion of defendant Ann Fletcher ("Fletcher") for Summary Judgment and to Dismiss [Document No. 49], and Fletcher's Motion to Stay [Document No. 45]. In her Motion for Summary Judgment and to Dismiss, Fletcher urges the Court to either (a) dismiss for lack of subject matter jurisdiction, (b) grant summary judgment on, or (c) abstain from deciding, the unjust enrichment claim filed by plaintiff JPMorgan Chase Bank, N.A. ("JPMorgan"). In her Motion to Stay, Fletcher urges the Court to stay this action pending the resolution of a parallel state-court trust action. On December 3, 2007, the Court abstained from hearing Fletcher's counterclaim for breach of fiduciary duty because of an identical counterclaim she filed in the state-court action.

### I.  Facts

On October 11, 1955, W. G. and Gertrude Skelly established a trust for the benefit of their daughter, Carolyn Skelly Burford, and their granddaughter, Ann Burford (now Fletcher). W. G. Skelly was the founder of the Skelly Oil Company. Skelly and his wife funded the trust with 2500 shares of stock of the Skelly Oil Company and 6500 shares of stock of Socony Mobil Oil Co. Inc. The trust agreement contains a provision relating to interpreting the trust under then-current law:

> With respect to the management of this trust, the character of and the manner of making investments and reinvestments of trust funds, the sale, conveyance or transfer of trust property and the power and duties of the Trustee, the provisions of the Oklahoma Trust Act now in force (60 Okl. St. Ann. Sec. 175.1 et seq), shall govern, except as they may be modified or limited by the provisions of this trust agreement.  No repeal or amendment of the terms of said act shall be effective to change the power or duties of the Trustee as herein established and defined by the provisions of said act existing on the date this trust agreeement  is executed . . .

Fletcher became the income beneficiary on the death of her mother in 1996.  Fletcher's two daughters together have a 50% remainder interest; the Oklahoma Annual Conference of the Methodist Church has the other 50% remainder interest. The trust is a net income trust, payable in monthly installments.

In a letter dated June 29, 2005, JPMorgan Chase notified Fletcher that, contrary to the trust agreement, it had been paying her more than the net income of the trust.  JPMorgan Chase claims to have overpaid Fletcher approximately $1.6 million over the period from 1999 to 2005.  JPMorgan Chase contends the overpayments were the result of  a mistaken interpretation and application of an Oklahoma trust statute by its trust manager.  The trust manager believed that, under the authority of Oklahoma trust statutes enacted subsequent to establishment of the trust in 1955, it was permissible to pay monthly income in excess of the actual net income of the trust and to make adjustments to principal to provide funds for payment of the additional monthly income.  Fletcher was not advised of any alleged overpayments until she received the letter of June 29, 2005.  Prior to that time Fletcher had been given no indication there was anything incorrect with respect to the monthly payments she received.  JPMorgan Chase admits that at the time Fletcher received the monthly overpayments, she believed she was entitled to them.  Fletcher is 70 years old, and her sole source of income is the trust.

2

The parties agree that, in determining the amounts Fletcher was allegedly overpaid, JPMorgan Chase obtained an opinion from an Oklahoma trust lawyer, analyzed the trust statements, evaluated the terms of the trust, analyzed the Oklahoma Trust Act of 1941, and reallocated the principal and income.

After calculating the amount it believes it overpaid Fletcher, JPMorgan Chase's predecessor in interest paid the Trust approximately $1.6 million.  On March 3, 2006, the predecessor in interest initiated a Petition in the Probate and Trust Division of the District Court of Tulsa County, Oklahoma.  In the state court action, JPMorgan Chase sought to resign as trustee and requested that a successor trustee be appointed.  On November 13, 2006, all of the beneficiaries of the trust filed counterclaims for breach of fiduciary duty against JPMorgan Chase and sought a full accounting.  On the same day,  JPMorgan Chase filed its claim against Fletcher for unjust enrichment in this court.   On December 11, 2006, JPMorgan Chase filed a Motion to Dismiss the state-court counterclaims filed by Fletcher and the three contingent remainder beneficiaries.  In that motion, JPMorgan Chase stated

> Essentially, [JPMorgan Chase's] claim for unjust enrichment in federal court is inextricably related to Ms. Fletcher's counterclaim recently filed in this [state court] action and unquestionably involve the same facts, issues, transactions, etc. [JPMorgan Chase] and Ms. Fletcher both seek monetary damages for the overpayment of trust income to Ms. Fletcher and the claims involve alleged conduct of the parties.

The state court denied JPMorgan Chase's motion to dismiss on February 28, 2007.  On March 19, 2007, JPMorgan Chase replied to the state court counterclaims.  In addiction, JPMorgan Chase asserted affirmative defenses against Fletcher for indemnification and contribution as co-trustee of

3

the trust from July 15, 1999 to March 27, 2005, for any liability JPMorgan Chase may incur to the contingent remainder beneficiaries.

## II.  Motion to Dismiss

Fletcher presents no argument in support of her motion for dismissal on the grounds that the Court lacks subject matter jurisdiction over JPMorgan Chase's claim of unjust enrichment.  Rather, the gravamen of Fletcher's brief is that this Court should abstain from the exercise of its subject matter jurisdiction.  The portion of Fletcher's motion in which she seeks dismissal for lack of subject matter jurisdiction is denied, as this Court concludes it has subject matter jurisdiction over the claim.

## III.  Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995).  The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Id*.

## A.  The *Colorado River* Doctrine

Fletcher argues that abstention is appropriate under the *Colorado River* Doctrine. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction

. . ..'"   *Colorado River Water Conservation District. v. United States*, 424 U.S. 800, 817 (1976),

quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910).  This approach stems from the "virtually

unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Id.*  The mere

potential for conflict in the results of adjudications does not, without more, warrant staying exercise

of federal jurisdiction.  *Id.* at 816.  Rather, abdication of the obligation to decide cases can be

justified under the abstention doctrine only in the exceptional circumstances where the order to the

parties to repair to the State court would clearly serve an important countervailing interest.  *Id.* at

813.

In *Colorado River,* the United States Supreme Court stated that there can be exceptional

circumstances permitting the dismissal or stay of a federal suit "due to the presence of a concurrent

state proceeding for reasons of wise judicial administration."[1]  *Id.* at 818.  Those circumstances,

"though exceptional, do nevertheless exist," and "are considerably more limited than the

circumstances appropriate for abstention [due to considerations of proper constitutional adjudication

and regard for federal-state relations]."  *Id.*   The Supreme Court has set forth a number of factors

for a court to consider in determining whether "exceptional circumstances" exist.  Before examining

these factors, however, a federal court must first determine whether the state and federal proceedings

are parallel.  *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994).  "Suits are parallel if

substantially the same parties litigate substantially the same issues in different forums." *Id.,* quoting

*New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir. 1991),

*cert. denied*, 503 U.S. 971 (1992).  Some courts, in determining whether state and federal

---

[1]  In situations involving the contemporaneous exercise of concurrent jurisdictions by state and federal courts, certain principles govern.  Those principles rest on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *Colorado River*, 424 U.S. at 817, quoting *Kerotest Mfg. Co. V. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).

proceedings are parallel, consider how the state proceedings could have been brought in theory, i.e., what claims and parties could have been included had the federal plaintiff make a timely application to do so, and compare the theoretical state proceedings to the federal proceedings. *Id.* The Tenth Circuit, however, has held that the better approach in determining whether state and federal proceedings are parallel, is to examine the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings. *Id.* Such an approach heeds the Supreme Court's admonition that to grant a stay or dismissal under the *Colorado River* doctrine would be "a serious abuse of discretion" unless the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties. . . . [T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.*, quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 28 (1983).

As set forth above, JPMorgan Chase has admitted that the proceedings are parallel – it stated that its federal unjust enrichment claim is "inextricably related" to Fletcher's counterclaims against JPMorgan Chase in the state-court action, and that the claims involve the same "facts, issues, transactions, etc." JPMorgan Chase initiated both the federal and state actions in the wake of its overpayments to Fletcher. JPMorgan Chase and Fletcher are parties in both actions. The proceedings are parallel insofar as Fletcher seeks an accounting overseen by the state court of the alleged overpayments and she denies in the federal action that she was overpaid. Both actions therefore necessarily involve a court-approved accounting of the overpayments made by JPMorgan Chase as trustee. The state court litigation would be an adequate vehicle for the *complete* resolution of the issue in view of the admitted fact that Fletcher's sole source of income is the trust and the

6

state court has the power to lower future monthly income distributions to Fletcher from the trust and redirect them to JPMorgan Chase in the event the former trustee were to prevail on its claim.

Based upon the above and foregoing considerations, this Court finds and concludes that the same parties are litigating substantially the same issues in different forums and that the state and federal proceedings are parallel.

If a federal court determines the state and federal proceedings *are* parallel, it must then determine whether deference to state court proceedings is appropriate under the particular circumstances. *Fox*, 16 F.3d at 1082. In *Colorado River*, the Supreme Court set forth a nonexclusive list of factors for courts to consider in deciding whether "exceptional circumstances" exist to warrant deference to parallel state proceedings: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. *Colorado River*, 424 U.S. at 818. The Supreme Court discussed several other factors in *Moses H. Cone*, such as the vexatious or reactive nature of either the federal or the state action; whether federal law provides the rule of decision; and the adequacy of the state court action to protect the federal plaintiff's rights. 460 U.S. at 18 n.20. Other courts also have considered whether the party opposing abstention has engaged in impermissible forum-shopping. *See, e.g., Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370-71 (9th Cir. 1990). No single factor is dispositive. "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16. Rather than use the factors as a "mechanical checklist," a court should engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* In *Colorado River*, the

Supreme Court held that a number of factors counseled against concurrent federal proceedings, the most important of which was the clear federal policy evinced in the McCarran Amendment (also known as the McCarran Water Rights Suit Act, 43 U.S.C. § 666) to avoid piecemeal litigation in cases to determine water rights.

The Oklahoma Trust Act, at Okla. Stat. tit. 60, § 175.23(A), provides:

> The [state] district court shall have original jurisdiction to construe the provisions of any trust instrument; to determine the law applicable thereto; the powers, duties, and liability of trustee; the existence or nonexistence of facts affecting the administration of the trust estate; to require accounting by trustees; to surcharge trustee; and in its discretion to supervise the administration of trusts; and all actions hereunder are declared to be proceedings in rem.

Under Oklahoma law, when JP Morgan Chase filed its Petition for instructions and construction of the trust, the state district court assumed *in rem* jurisdiction over the trust proceedings.  Oklahoma claims for its district courts original jurisdiction to construe the provisions of any trust agreement and determine the law applicable thereto, to determine the liability of the trustee, to require an accounting by the trustee, and to surcharge the trustee.   Under the law of the Tenth Circuit, once the jurisdiction of a state court over the administration of a trust and the liability of the trustees has attached, the proceedings were *quasi in rem* and such jurisdiction is exclusive. *Swanson v. Bates*, 170 F.2d 648, 651 (10th Cir. 1948); *Buck v. Hales,* 536 F.2d 1330, 1331-2 (10th Cir. 1976).  "When the same parties are involved in litigation that is *in rem* or *quasi in rem*, the court where the last suit was filed must yield jurisdiction."  *Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993).

JPMorgan Chase argues that its claim for unjust enrichment does not fall within the rule stated in *Swanson, Buck* and *Cassity* because it is not asking this court to exercise jurisdiction over the trust *res,* nor is it asking this court to review, interpret or construe the provisions of the trust.

Having reviewed the evidentiary materials submitted in conjunction with the motion for summary judgment, this Court concludes that the claim for unjust enrichment cannot be resolved without construction of the trust agreement, construction of Oklahoma trust law, and an accounting of the trust.  In order to determine what amounts Fletcher should have been paid under the trust, it is necessary to construe the trust instrument and Oklahoma trust law.  In order to determine the amount of any alleged overpayments (which Fletcher denies), it will be necessary to conduct an accounting. As mentioned above, the trust beneficiaries have requested such an accounting in the state court action.   Although JPMorgan Chase has not asked the Court to exercise jurisdiction over the trust *res*, its federal claim for unjust enrichment would necessarily require this Court to impinge upon the state court's exclusive *quasi in rem* jurisdiction over matters specified in Okla. Stat. tit. 60, § 175.23(A).

Other factors suggest that deference to the state court trust proceeding is appropriate in this particular case:

(1) JPMorgan Chase did not file this action until eight months after it filed the state court action;

(2) federal law does not provide the rule of decision in this diversity action;

(3) it is desirable to avoid  piecemeal litigation in two jurisdictions, particularly in view of the uncontested fact that Fletcher's sole source of income is the trust;

(4) the federal forum is inconvenient, unnecessarily duplicative, and expensive for Fletcher as it requires her counsel to litigate parallel actions in two separate courts;

(5) the Probate and Trust Division of the District Court of Tulsa County is a specially constituted court with specialized competence and expertise in trust matters;

9

(6) since Fletcher's sole source of income is the trust, the funds to satisfy any judgment would necessarily come from the trust, and adjustments to Fletcher's monthly income distribution is within the exclusive province of the state court; and

(7) the state court trust proceeding initiated by JPMorgan Chase is adequate to protect JPMorgan Chase's rights in connection with its claim of unjust enrichment.

Upon review of the pleadings and the briefs and the evidentiary materials appended thereto, the Court finds and concludes that exceptional circumstances exist which warrant deference to a parallel state court trust proceeding  for reasons of wise judicial administration, and that this Court should abstain from deciding this case.

### B. *Younger* Abstention

In its reply, Fletcher argues for the first time that this Court should abstain from hearing the unjust enrichment claim under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).  The Court cannot consider the argument, as a party opposing summary adjudication is not afforded the opportunity to respond to new arguments raised in a reply.

### IV.  Motion to Stay

Having determined it should abstain from exercising jurisdiction, the Court concludes that the matter should be stayed.

WHEREFORE, defendant Ann Fletcher's Motion  for Summary Judgment and to Dismiss

[Document No. 49] is granted in part and denied in part, and defendant Fletcher's Motion to Stay

[Document No. 45] is granted.

IT IS SO ORDERED this 14th day of January 2008.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

11